Frank Damrow, Appellee, v. Sanitary District of Chicago, Appellant.

### Gen. No. 17,492.

1. MASTER AND SERVANT—*what evidence and allegations raise question of assumed risk.* Evidence that a work train of dump cars with an engine in the rear and a crew consisting of an engineer familiar with the method of work and a helper, was standing still, and that a similar train coming from behind collided with it and injured the engineer, together with allegations that sufficient and competent help was not employed to properly warn, guard and protect the plaintiff and to operate the trains, raises a question of assumed risk.

2. MASTER AND SERVANT—*when assumed risk is for the jury.* Where an engineer in an engine at the rear of a work train is injured by a similar train coming up from behind, and the accident is caused by the operation of trains without a sufficient number of men, if the engineer had been doing the work for a month knowing the condition and acquiescing therein, it is a question of fact whether he assumed the risk.

3. MASTER AND SERVANT—*when instruction as to sufficient averments ignores question of assumed risk.* Where a question of assumed risk is raised in a case where an engineer in an engine at the rear of a work train was injured by a collision with a similar train coming up from behind, and it is averred in sundry ways that sufficient and competent help was not employed to properly warn, guard and protect the plaintiff and to operate the train, an instruction that the plaintiff need not prove all the averments of negligence and that if there is sufficient evidence of any one of the allegations of negligence he may recover, is improper in ignoring the question of assumption of risk.

4. MASTER AND SERVANT—*where particular phraseology in instruction ignores question of assumed risk.* Where an engineer in an engine at the rear of a work train is injured by a similar train coming up from behind, and a question of assumed risk is involved,

an instruction directing a verdict, detailing the risks that are assumed and permitting recovery if the plaintiff was injured in an accident the risk of which he had not assumed "or" that was due to defendant's failure to use ordinary care, is defective in ignoring the question of the assumption of risk, in that the word "or" conveys the idea that if the plaintiff was injured by the defendant's failure to use reasonable care he should recover.

5. MASTER AND SERVANT—*when defective instruction cannot be aided by other instructions given.* An instruction in a master and servant case that is erroneous in ignoring a question of assumed risk and directing a verdict cannot be aided by other instructions given.

6. MASTER AND SERVANT—*when instruction on duty of master ignores questions of assumed risk.* Where an engineer in an engine at the rear of a work train is injured by a similar train coming up from behind, and from the evidence and a declaration charging a failure to furnish sufficient and competent employees a question of assumed risk is raised, an instruction directing a verdict if an adequate number of fit and competent men was not employed to safeguard the plaintiff is erroneous in ignoring the question of assumed risk.

Appeal from the Superior Court of Cook county; the HON. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed November 12, 1912.

F. J. CANTY and P. L. McARDLE, for appellant; J. C. M. CLOW, of counsel.

OTTO G. RYDEN, for appellee; NORMAN A. BECK and BECK & MIES, of counsel.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

The plaintiff was injured on October 21, 1908, while working for the Sanitary District. He brought suit January 28, 1909, and on December 24, 1910, recovered a verdict for the sum of $999, upon which judgment was entered.

The Sanitary District was, at the time of the injury, engaged in excavating the north branch of the Sanitary channel at Wilmette, Cook County. This channel connected with Lake Michigan at one end and the

north branch of the Chicago river at the other. The point at which they were working when the accident in question happened was near Sheridan Road at Wilmette. The channel at this point runs north and south and Sheridan Road runs parallel with it a little distance to the east. The dirt was taken to a dump which was located on the shore of the lake near the mouth of the channel. The dirt was loaded upon little dump cars in the ditch and then, by means of a dinky steam engine, the cars were pushed along the tracks to the dump. The railroad tracks ran north from the place where the dirt was dug a short distance, and then turned to the right or east and crossed Sheridan Road, and then again at a point a short distance east of Sheridan Road, the tracks again turned to the left or north and ran up on the dumps. There were two dumps; one of them known as the high dump and the other as the low dump. The high dump was about twenty feet above the low dump. At about the point east of Sheridan Road, where the track made the curve to the north, the track ran off into three branches. There was a switch at this point by the movement of which trains could be run out on whichever branch it was desired. The physical situation there and the surroundings are described by plaintiff, and his description is admitted to be substantially correct.

In regard to the occurrences leading up to the accident, the plaintiff said:

"There were six other work trains at that time. I continued handling one of the work trains to the 21st of October; that was when I got hurt. At that time I was standing with my train on what they call the high dump. My train was stopped. This high dump was also called the short dump. I had brought my train from Central street. I had a train of seven cars ahead of my engine and I was headed in on the short dump. I had these seven cars ahead of me shoving them in on the short dump. I had made several trips. I think about five or six that day before the accident happened. The trains made on an average seven or

Damrow v. Sanitary District of Chicago, 174 Ill. App. 366.

eight trips a day. On the day of the accident I was running one of the work trains and when I came up Center to Sheridan Road I got a signal to pull ahead and I pulled ahead into the short dump. I went in about two hundred feet. When I got up that far I stopped the train. I was stopped by the flagman, that is, by my helper and the dump boss. The track was blocked and they were clearing it so I could shove ahead. While they were doing that I was in the cab of my engine; was watching for a signal to push ahead; was on the right hand side of the engine cab. The cars were ahead of the engine, that is, to the north. From the engine back to the switch in Sheridan Road it was down hill a little and from the switch the other way to Sheridan Road it was up hill. The track was not straight but it curved about forty-five degrees: along the curve was some lumber, timber and a lot of big dirt and boulders. The lumber was in the curve. It was about fifteen feet high and the dirt was seven or eight feet high. While standing there the engine was facing north. The cab of the engine was facing south. While I was there I felt the vibration of the track and I looked back and saw a train on top of me. I went to the window on the side of the cab, got to the window, took a hold of the roof of the cab and was trying to get out of the window when they struck and I fell down the dump a distance of about thirty feet. Dan Carey was the engineer on the train that came up behind me while I was standing there on the short dump. The speed at which he was coming was about ten miles an hour. The cars in Dan Carey's train were ahead of his engine. It was the first car of his train that struck my engine, that is the seventh car from his engine. The train crew of my train consisted of myself and a helper; the train crew on Carey's train consisted of a helper and himself. There were no other men engaged in the operation of my train or Carey's train. There was no one else anywhere along the track east of Sheridan Road engaged in the operation of those trains. Dan Carey's engine at the time of the accident had no brake on it at all. The cars themselves had no brakes on them. I had been engaged in the operation of

one of these trains upon the drainage canal at the time of this accident about a month. During that month I had been constantly engaged each day in the operation of one of these trains, and during that month I worked as an engineer all of the time, every day. During that time I had occasion to and did observe the manner of operating those trains. I am familiar with the manner of operating those trains.''

On September 19, 1901, plaintiff filed an amended declaration consisting of six counts. After a demurrer to the declaration was overruled, the defendant filed the plea of general issue and, in addition thereto, a special plea setting up that the defendant was a public *quasi* corporation created under the general laws of the state of Illinois for governmental purposes only and was not subject to a suit for damages such 'as claimed in this case. The issues were joined on these pleas.

The court instructed the jury for the defendant that there should be no recovery under counts 1, 2, 4 and 5, and told the jury to disregard all the allegations in those counts. The case was, therefore, submitted to the jury on counts 3 and 6.

Count three charges the defendant with failing to employ sufficient and competent help. The allegations in this count are, after stating the character of the defendant and its business and the nature of the work which was in progress at the time, and plaintiff's particular duties as a servant of the defendant, that the defendant failed and neglected to perform its duty, in that it did not use and employ enough and competent help in and about the running and operation of said work trains, so as to be able to run and operate them with reasonable safety to the men engaged in that work, and in that it then. and there ran its said trains when loaded by having the said engines or locomotives push or back up said trains over and along said tracks, curves and switches without a lookout or flagman on the first or foremost car of said train to signal

the engineer and to give warning in case of danger and without placing a switchman or flagman to tend the switches and to direct the course of said trains at the switches; and, also, in that it employed unskilled and incompetent help to operate some of said trains, one of said trains and engines being then and there operated by an engineer in the employ of defendant who was inexperienced, careless, reckless and incompetent.

In the sixth count, the negligence of some other servant of the defendant, not a fellow-servant of the plaintiff, in operating the train without ringing the bell and without the proper lookout, by reason whereof the plaintiff was injured, is alleged.

Under the averments of the third count and upon the evidence offered in support thereof, the question of assumed risk was raised. Ross v. Chicago, R. I. & P. R. Co., 243 Ill. 440; Kath v. East St. Louis & S. R. Co., 232 Ill. 126; Illinois Cent. R. Co. v. Fitzpatrick, 227 Ill. 478.

Error is assigned upon several instructions, in that the assumption of risk is ignored. Instruction No. 2, which directs a verdict, is criticised by appellant upon the ground that it ignores the question of assumed risk. The instruction is as follows:

"The court instructs the jury that it is not incumbent on the plaintiff to prove all the averments in the declaration relative to the negligence of the defendant, and if you believe from the evidence that the plaintiff has proved by a preponderance of the evidence that the defendant was negligent in any one of the ways averred in the declaration, then, in such case, as to that averment, you should find in favor of the plaintiff."

The instruction, in our opinion, ignores the question of assumption of risk, an element involved in the third count of the declaration and the evidence offered in support thereof.

Instruction No. 4, also given at the request of plaintiff, is as follows:

"The court instructs the jury that while the plaintiff assumed the ordinary, obvious or known risks of his employment, he assumed only such risks as were usual, ordinary and incident to his employment, and which remained so incident after the defendant had taken reasonable care to prevent them. And if you find from the evidence that the plaintiff was injured in an accident, the risk of which he had not assumed, or, that was due to the defendant's failure to take reasonable care to prevent it, and that the plaintiff was in the exercise of ordinary care for his own safety at or before the said accident, then you may return a verdict for the plaintiff."

In our opinion the instruction is erroneous in that it ignores the question of assumed risk. The word "or" after the word "assumed" conveys the idea and the instruction to the jury that if the jury find from the evidence that the plaintiff was injured in an accident that was due to defendant's failure to take reasonable care to prevent it, etc., they should return a verdict for the plaintiff. The word "or" cannot be read as "and" in this instruction so that it includes the hypothesis that the risk which the plaintiff had not assumed was excluded. The instruction was erroneous, and, inasmuch as it directed a verdict, cannot be aided by other instructions given.

Instruction No. 5, in our opinion, is bad because it is not based upon evidence.

Instruction No. 6, requested by the plaintiff, reads as follows:

"The court instructs the jury as a matter of law that it was the duty of the defendant to exercise ordinary care to supply for the running and operating of its said work trains an adequate number of fit and competent servants to run and operate the said work trains with reasonable safety to the men engaged in and about the operation of the same, and if you find from the evidence in this case that the defendant failed to perform its duty in this respect, and that in consequence of such failure the plaintiff was injured, as charged in his declaration while he was in the exercise

of due care and caution for his own safety, then the defendant is liable, and you may return a verdict for the plaintiff.''

Instruction No. 7 also directs a verdict and is along the same lines as Instruction No. 6. These instructions are both erroneous under the third count of the declaration, and upon the evidence offered, in that they ignore the question of assumed risk.

The plaintiff had been operating the train under the conditions set forth in his evidence for a month. These conditions show that the same method of operating the trains with a lack of sufficient number of men to properly conduct the business, had existed during all the period of one month during which the plaintiff had been employed in turning a locomotive and train. The evidence does not disclose that the plaintiff made any objections to this method of conducting the business, but acquiesced therein. It is, therefore, a question of fact whether the plaintiff assumed the risks of the method of running the trains shown by the evidence, and that question should have been submitted to the jury by proper instructions.

Other instructions are criticised, and justly we think; but we do not deem it necessary to discuss them specifically as they will probably not be given on a new trial of the case, which, in our opinion, must be granted.

For the errors indicated in the instructions, the judgment is reversed and the cause remanded.

*Reversed and remanded.*